PRINGEY v. WARRALL ET AL.

1. **Fraudulent Conveyance**: FACTS NOT CONSTITUTING. W., being financially embarrassed, received of his mother $1,200, which he used for his own purposes, and in return therefor he transferred to his mother notes of a third person to the amount of $1,200, and also deeded to her his homestead, worth $650. The mother, for $1,500, purchased the land in controversy, and had it conveyed to W.'s wife, and it became the homestead of W. and his family. This homestead plaintiff seeks to subject to the payment of W.'s debt to him, contracted prior to the procuring of the homestead. *Held* that this could not be done, because, though the mother had the homestead deeded to the wife to place it beyond the reach of W.'s creditors, she had a right so to do, and as plaintiff had no equitable right to any of the funds which went into the homestead, he was not prejudiced, and had no ground of complaint.

*Appeal from Guthrie District Court*—HON. J. H. HENDERSON, Judge.

MONDAY, DECEMBER 19.

ACTION in equity to subject certain real estate, the title to which is in the defendant Emma A. Warrall, to the payment

of a judgment against her husband, Arthur Warrall, who is
a defendant in the action. Judgment for the plaintiff, and
the defendants appeal.

*J. H. Applegate*, for appellant.

*Chas. S. Fogg*, for appellee.

SEEVERS, J.—In 1877, the defendant Arthur Warrall
became financially embarrassed. Prior to that time he owned
a farm in Muscatine county, which he sold to Anderson in
1875 or 1876, and in part payment therefor Anderson exe-
cuted to him notes for $2,700. After he became insolvent,
he transferred said notes, to the amount of $1,200, to his
mother. He was also the owner of a homestead, which he
had acquired prior to contracting the indebtedness to the
plaintiff. Such homestead was worth at least $650. This
he conveyed to his mother, and she purchased the land in
controversy, and had it conveyed to the defendant Emma
after her husband became insolvent. Mrs. Emma Warrall
paid nothing for the land conveyed to her. What has been
stated is as the plaintiff claims the facts to be. The defend-
ants claim that, about the time Arthur Warrall became
financially embarrassed, his mother gave him $1,200, which
he either paid to his creditors, or used for other purposes,
and that he transferred the Anderson notes to his mother in
consideration therefor, and that she gave for the land in con-
troversy $2,000, on which there was a mortgage of $500,
the payment of which was assumed by the defendants. So,
in fact, as the defendants claim, Arthur Warrall's mother
paid $1,500 for the land in controversy. Now, the question
is whether she gave Arthur money for the Anderson notes,
or paid his debts on which she was security to that amount.
If she did, he could legitimately transfer to her, and she
could receive, the Anderson notes in payment or satisfaction
of the amount Arthur Warrall owed her. It is equally clear,
if the Anderson notes belonged to her she could purchase

the land therewith, and give the land to the defendant Emma, or any one else, and it could not be subjected to the payment of the debts of the latter's husband.

We have each separately read the evidence, and separately have reached the conclusion that the claim of the defendants just stated is sustained by the evidence. Arthur Warrall and his mother so testify, and there are no sufficient circumstances or badges of fraud shown to justify us in rejecting their evidence. There is no evidence contradictory thereto which materially affects their credibility, and there are some circumstances which tend to strengthen their evidence. Besides this, the story told by them, to our minds, seems natural and probable. It is true, no doubt, that the land was conveyed to the defendant Emma so that it could not be reached by his creditors, but this the elder Mrs. Warrall had the legal right to do if she saw proper. It is also true that Arthur Warrall is unable to tell, with any degree of certainty, which of his creditors he paid with the money his mother let him have, or what he did with it. Such transactions occurred, however, more than ten years prior to the time he gave his evidence, and it in fact makes no difference what he did with the money, if he legitimately applied it to his own purposes. We feel satisfied that he got the money, and none of it was returned to his mother, and it was not used in purchasing the premises in controversy. It is clear that the proceeds of the old homestead could be used in purchasing the premises in controversy which constitutes the new homestead of Arthur Warrall and his family, and it is immaterial that the title thereto vested in his wife. A decree must be entered in accord with this opinion, either here or in the district court, as the defendants may elect.

REVERSED.